IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TERRENCE MAURICE WHITAKER,     )
                               )
          Petitioner,          )
                               )
     v.                        )     1:08CV702
                               )
ALVIN W. KELLER, JR.,[1]       )
                               )
          Respondent.          )

**ORDER, MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**I.  Facts and Procedural History**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 28, 2007, in the Superior Court of Guilford County, Petitioner pled guilty to possession of a firearm by a convicted felon, carrying a concealed firearm, driving while impaired, and being a habitual felon in cases 05CRS95100, -56516, -95098, and 06CRS24146. However, that plea was not easily achieved. Petitioner was indicted in the state courts on multiple charges stemming from multiple incidents. At the time of his guilty plea, he faced charges of carrying a concealed firearm, driving while impaired, possession of a firearm by a felon, trafficking in cocaine, being a habitual felon, having unsealed wine or liquor in the passenger area of a vehicle, identity theft, two charges of maintaining a

---

[1]Petitioner originally named Theodis Beck as the Respondent in this case. At that time, Beck was the Secretary of the North Carolina Department of Correction. However, he has since retired and has been replaced by Alvin W. Keller, Jr. Keller is substituted as the Respondent in this case pursuant to Fed. R. Civ P. 25(d).

dwelling to keep controlled substances, possession of a stolen firearm, conspiracy, possession of marijuana, resisting a public officer, driving while license revoked, no tag light, and a second charge of possession of a firearm by a convicted felon. He retained three attorneys in succession to represent him on these charges. The first two attorneys advised Petitioner to enter into a plea agreement, but he rejected this advice. His third attorney was Joseph Williams.

On the morning of March 26, 2007, the State called for trial the charges for carrying a concealed firearm, driving while impaired, having unsealed wine in the passenger area, possession of a firearm, and being a habitual felon. (Docket No. 15 at 4.) Petitioner eventually entered a guilty plea and received the sentence of 93 to 121 months. This was supported by a factual basis stating that Petitioner was stopped by a state trooper while traveling about 80 miles per hour in a 55 zone. When the trooper spoke with Petitioner, he smelled alcohol and asked him to get out of the car. Petitioner got out, but kept his hand in his pocket. The officer asked him to remove his hand, but Petitioner refused. The officer then patted Petitioner down for safety and discovered a .357 magnum handgun in his pocket. Petitioner was arrested, and later registered .10 on a breath alcohol analyzer. (Id. at 42-43.)

Prior to Petitioner pleading guilty, and just after the State called these matters for trial, Attorney Williams asked to be heard in order to enter certain matters on the record. He informed the trial court that he had recommended that his client accept a plea

agreement, but that Petitioner refused to do so.  The plea offer was for Petitioner to plead guilty to just a few charges and receive a single, consolidated sentence based on a Class C felony at a record level of III.  All other pending charges would be dismissed.  (Id. at 5-6.)

Williams continued by stating that, if Petitioner did not plead guilty, several of the remaining felony charges could be "habitualized" and that the prosecutor had informed him that he intended to try them one by one.  This could have exposed Petitioner to multiple consecutive habitual felon sentences, with each being of the same approximate length as the single sentence he could receive by pleading guilty.  The prosecutor added that the United States Attorney's Office was also considering indicting Petitioner on some of the offenses, but would not do so if he received at least ten years on the state charges.  By rejecting the plea offer, Petitioner exposed himself to federal drug and firearm charges.  Williams estimated that Petitioner would receive an additional "twenty-some" year minimum sentence if indicted and convicted in federal court.  (Id. at 6-8.)

Addressing the facts of the firearm case that had been called for trial, Williams stated that Petitioner had initially represented to him that officers stopped him for a minor speeding incident, but left out other important facts.  Williams had hoped to make a successful probable cause argument, apparently to suppress the eventual discovery of the firearm in the case, but later learned that Petitioner was stopped using certified radar.

-3-

He also discovered that, after the officer found the gun on Petitioner's person, he told the officer that he had it for protection. Williams no longer felt that he could make the probable cause argument or that it was advisable for Petitioner to proceed to trial. (Id. at 7.)

The parties and the trial judge continued to discuss the proposed plea agreement to settle the details. Eventually, it was determined that Petitioner could plead to a few charges and receive a single sentence of 93 to 121 months (the lowest sentence in the presumptive sentencing range for his felony and record levels). In return, the state would drop all other pending charges. The proposed sentence would also satisfy the United States Attorney's Office so that Petitioner would not be indicted in federal court. Petitioner was then asked whether he wanted to accept the plea. (Id. at 13-15.)

Petitioner told the trial judge that he was not guilty, that he did not want to plead guilty, that Williams had told him different "stuff" in the beginning, and that he wanted to hire new counsel. The trial judge replied that he would not delay the matter for Petitioner to hire new counsel simply because he did not "like the reality of the situation." (Id. at 17-18.) He stated that Petitioner could either go to trial with Williams as counsel or represent himself. He discouraged Petitioner from exercising the latter option. After being given a few minutes to consider the matter, Petitioner continued to seek to hire a new attorney or to have one appointed. The trial judge refused, noting that the case

-4-

was old, that the jurors were present in the building, and that Petitioner had not given a sufficient reason for delaying matters at that point. (Id. at 20.)

Petitioner next stated that he would accept the plea. However, after further consultation with Williams and an unidentified person in the gallery, Petitioner decided to go to trial. The prospective jurors were called in and preparations were made to choose a jury. Petitioner then changed his mind again and accepted the plea offer. This time, he followed through with the guilty plea and received the agreed upon sentence of 93 to 121 months of imprisonment.

Petitioner did not file a direct appeal. However, he did submit a motion for appropriate relief in the trial court. This was denied on December 6, 2007, except for a claim that Williams was operating under a conflict of interest at the time of the plea. That claim was the subject of an evidentiary hearing, but was denied following the hearing.

Petitioner's conflict of interest allegation was based on the fact that his possession of a stolen firearm charge, which was one of the charges dismissed as part of the plea agreement, involved a firearm stolen from Williams' son. Petitioner and his girlfriend testified that they discussed this fact with Williams and that he assured them there was no problem. Williams, on the other hand, testified that he was previously unaware that the firearm in question was one stolen from his son. He stated that he learned it only on the day of the evidentiary hearing and that his office's

involvement with the stolen firearm charge was limited to requesting continuances of the case. These continuances were actually handled by his paralegal. His paralegal also testified. She confirmed that she handled the continuances, and added that she did not read the file sufficiently to learn that the firearm was stolen from Williams' son. She also stated that she learned that fact only on the day of the evidentiary hearing. (Docket No. 13, Ex. 1.)

The judge deciding the motion for appropriate relief found the testimony of Williams and his paralegal to be more credible than that of Petitioner and his girlfriend. He, therefore, concluded that Williams did not operate under a conflict of interest at the time that Petitioner entered his guilty plea and that, in any event, Petitioner was not prejudiced by the potential conflict. (Docket No. 9, Ex. 8.) The remainder of the motion for appropriate relief was denied for these reasons.

Following the denial of his motion for appropriate relief, Petitioner filed a petition for certiorari with the North Carolina Court of Appeals. This was denied on August 6, 2008. He then sought discretionary review from the North Carolina Supreme Court. It was still pending at the time Petitioner filed his habeas petition in this Court on September 30, 2008, but was later denied on December 11, 2008.

## II. Pending Motions

Respondent has filed a motion for summary judgment which seeks to have the habeas petition denied. There are also three other pending motions which need to be addressed prior to discussing the summary judgment motion. Respondent has filed two motions to expand the record to include stenographic transcripts of Petitioner's guilty plea and of the evidentiary hearing on his motion for appropriate relief. (Docket Nos. 12, 14.) Petitioner has not opposed these motions, which will be granted. Petitioner has also filed a motion. In it, he seeks to amend his petition to "add additional information" addressing "errors in the record" which he discovered after receiving copies of the sentencing transcripts. (Docket No. 18.) He does not identify the additional points or claims that he wishes to raise. Therefore, his motion to amend will be denied for being insufficient. Only the summary judgment motion remains for further consideration.

## III. Claims in the Petition

Petitioner discusses four potential claims for relief in his petition and supporting brief. The first is a claim for ineffective assistance of counsel. Petitioner asserts that Williams failed him by (1) not filing a pretrial motion based on the destruction of the videotape taken from the dash camera of the state trooper who stopped him, (2) refusing to call Petitioner's sister as a witness if he went to trial, (3) refusing to call the trooper a liar during cross-examination if Petitioner went to trial, (4) representing him despite the alleged conflict of

interest, and (5) not moving to suppress Petitioner's prior convictions in the event he testified at trial.

Petitioner's other claims are more succinct. His second claim alleges that he was denied his right to counsel of his choosing when the trial judge refused to continue the trial to let him hire a new attorney. His third claim asserts that his guilty plea was not knowing and voluntary because his attorney incorrectly advised him that he could receive 20 years of imprisonment if he went to trial and failed to advise him that he could not appeal his conviction and sentence. Finally, Petitioner's fourth claim argues that his indictment on the felon in possession of a firearm charge was defective because it did not allege the serial number of the gun and did not state whether the possession was actual or constructive.

## IV. Discussion

### A. Procedurally Barred Claims

Although most of Petitioner's claims were raised in his motion for appropriate relief and decided on their merits, some were not. Petitioner's contentions that he received ineffective assistance of counsel because his attorney failed to move to suppress his prior convictions and that his plea was involuntary because he did not know that he would have no right to a direct appeal were raised for the first time in his petition for certiorari filed with the North Carolina Court of Appeals following the denial of his motion for appropriate relief. His claim that his indictment was defective was raised for the first time in his petition to this Court. This

leaves all three of these claims or subclaims unexhausted. Castille v. Peoples, 489 U.S. 346 (1989)(raising claims for first time to appellate court on discretionary review does not meet exhaustion requirement); Felton v. Barnett, 912 F.2d 92, 94-95 (4th Cir. 1990.)(same); Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)(raising claims for first time in federal court does not meet exhaustion requirement of § 2254(b)).

Not only are these particular arguments unexhausted, they are also procedurally barred. If Petitioner were to return to the state courts to exhaust his unexhausted claims by having them reviewed through another motion for appropriate relief, he would face mandatory imposition of a procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1), (a)(3), and (b)(a claim shall be denied if a petitioner was in a position to raise the claim on appeal or in a prior motion for appropriate relief, but failed to do so, absent cause and prejudice or a fundamental miscarriage of justice). Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001)(noting that § 15A-1419 procedural bars had become mandatory). Where, as here, a habeas petitioner would find his nonexhausted claims subject to a mandatory procedural bar if he returned to state court for exhaustion, the claims are also barred from federal habeas review. Breard, 134 F.3d at 619.

A petitioner can avoid the application of the procedural bar if he can demonstrate either cause and prejudice or that a miscarriage of justice will occur if his claim is not heard. McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000)(citing Coleman

v. Thompson, 501 U.S. 722, 750 (1991)). Petitioner has not argued or demonstrated cause, prejudice, or a fundamental miscarriage of justice. Therefore, Petitioner's arguments that he received ineffective assistance of counsel because his attorney did not move to suppress his prior convictions, that his plea was involuntary because he was not advised that he had no right to appeal his plea, and his claim that his indictment was defective are procedurally barred. They should all be denied.

### B. Remaining Claims

### 1. Standards of Review

Petitioner's remaining claims were raised throughout the state court proceedings and denied on their merits. Therefore, this Court will also review them. Because Petitioner's remaining claims were adjudicated by the state courts on their merits, the Court must then apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to petitioner's claims. That statute states that habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the

Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. <u>Id.</u> at 409-411. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### **2. Ineffective Assistance Claims**

The main segment of Petitioner's claims are related to ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. <u>See</u> <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), <u>abrog'n on other grounds recog'd</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. <u>See</u> <u>Spencer v. Murray</u>, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice

-11-

following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

Petitioner's first ineffective assistance of counsel allegation is that his attorney failed to file a motion regarding the destroyed videotape from the trooper's dashboard camera. Petitioner states that the tape would have supported an argument that the gun was found in the car by the trooper and not on his person. He believes that the destruction of the tape constituted destruction of evidence by the State and that this destruction could have supported a successful motion to dismiss the firearm possession charge.

Destruction of exculpatory evidence can be a violation of a defendant's due process rights. However, this is true only where the destruction occurs through bad faith on the part of the prosecution or law enforcement officers. Holdren v. Legursky, 16 F.3d 57, 60 (4th Cir. 1994.) Here, the only statement in the record is that the destruction of the tape was apparently in accordance with the standard procedures of the North Carolina Highway Patrol. (Docket No. 9, Ex. 7.) Petitioner has certainly produced no evidence, as opposed to bare allegations, indicating otherwise. For this reason, the trial court would not have felt compelled to grant a motion to dismiss had it been raised. See, e.g., United States v. Sanders, 954 F.2d 227, 231 (4th Cir. 1992)(trial court denial of motion to dismiss upheld where evidence

-12-

not destroyed in bad faith). Petitioner's attorney did not err in failing to raise a motion that would not have succeeded and Petitioner certainly could not have been prejudiced by the failure to make the motion. Accordingly, the state court's denial of the claim in Petitioner's motion for appropriate relief was not contrary to, or an unreasonable application of, Supreme Court precedent regarding ineffective assistance of counsel. This claim should be denied.

Petitioner's next two ineffective assistance of counsel contentions are that his attorney told him that, if a trial occurred, he would not call Petitioner's sister to testify and would not accuse the trooper of lying on cross-examination. According to the transcript of the state court evidentiary hearing, Petitioner wished to have his sister testify that she placed the firearm in the car that Petitioner was driving and that she did so without his knowledge. Williams freely admitted that Petitioner sought to have her testify, but that he (Williams) had no intention of putting her on the stand. He believed that her testimony would constitute perjury. He also concluded that her testimony would not be helpful to Petitioner because the trooper who stopped Petitioner was willing to testify that he retrieved the gun from Petitioner's person. Therefore, no matter how the gun got in the car, Petitioner possessed it when arrested. Counsel stated that the result of the trial following the trooper's testimony would be "a two minute verdict." (Docket No. 13, Ex. 1 at 40-41.)

-13-

Case 1:08-cv-00702-TDS-DPD   Document 20   Filed 06/08/09   Page 13 of 20

Petitioner also wanted Williams to accuse the trooper of lying. Williams testified that he told Petitioner that he was not going to do this. (Id. at 40.) He had interviewed the patrolman who stated that he had taken the gun directly off of Petitioner's person. Williams did not feel that he would be able to get a jury to believe that the patrolman was lying. (Id. at 32.) Petitioner has pointed to no actual evidence which counsel could have used to make the assertion that the trooper was lying.

Obviously, part of counsel's decision not to call Petitioner's sister in the event of a trial was based on his ethical duties not to call a witness who he believed would be committing perjury. Further, it was also a strategic choice based on relevance and the likely impact (or lack of impact) of the testimony. Strategic decisions of counsel are entitled to great deference in the collateral review process. Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). Viewed in context, it cannot be said that counsel erred in informing Petitioner that he would not call his sister as a witness or that Petitioner was prejudiced by that decision. Likewise, it was counsel's strategic determination that, without any evidence that the officer was lying, he would not be able to convince a jury that the officer did not take the gun directly from Petitioner. He made this determination after speaking with the trooper directly to assess his probable testimony. Again, Petitioner can demonstrate neither error nor prejudice. Finally, the state court's denial of these claims was not a decision contrary to, or involving an unreasonable application of,

-14-

established Supreme Court precedent. These claims should be denied in the present case as well.

Petitioner's last ineffective assistance of counsel allegation is that his attorney operated under a conflict of interest because Petitioner was charged in another case with possessing a firearm stolen from counsel's son. This issue really turns on a factual, not legal, determination by the state court. The conflict of interest question was the main subject of the evidentiary hearing. Petitioner and his girlfriend testified that Williams knew of the connection between his son and the stolen firearm charge, while Williams and his paralegal gave testimony indicating that he did not. This resulted in a classic "swearing contest" which the state court resolved in favor of Williams. It found that Williams did not know that the firearm was stolen from his son at the time he represented Petitioner. Therefore, he did not have a conflict of interest or provide ineffective assistance of counsel as a result. (Docket No. 9, Ex. 8, ¶¶ 19, 21, 24.)

In order to have this Court disregard the state court's factual determination that Williams had no knowledge of the connection to his son, Petitioner would have to present clear and convincing evidence rebutting that finding. 28 U.S.C. § 2254(e)(1). Petitioner has not done so, but has instead presented only the same statements and arguments that he made to the state courts. These were not sufficient there, and are certainly not sufficient to meet the higher evidentiary burden in this Court. Accordingly, Petitioner also cannot demonstrate that

Williams represented him while having a conflict of interest. Petitioner's ineffective assistance of counsel claim fails in its entirety.

### 3. Denial of Counsel Claims

Petitioner's next claim for relief asserts that he was denied his right to counsel of his choosing when the trial judge refused to delay the trial in order to allow him to hire a new attorney or have counsel appointed. This left him with the choice of proceeding to trial represented by Williams, proceeding to trial represented by himself, or pleading guilty. He chose to plead guilty.

The Sixth Amendment of the United States Constitution guarantees that a criminal defendant has the right to be represented by counsel of his choosing. <u>Sampley v. Attorney General of North Carolina</u>, 786 F.2d 610, 612 (4th Cir. 1986). However, there are limits on this right.

> Obviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial, <u>see</u> <u>Ungar v. Sarafite</u>, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), or by objecting that counsel then retained or assigned is not presently 'counsel of his choice,' <u>see</u> <u>Morris v. Slappy</u>, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The limit of the right is necessarily found in the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of 'assembling the witnesses, lawyers, and jurors at the same place at the same time,' <u>Morris v. Slappy</u>, 461 U.S. at 11, 103 S.Ct. at 1616.

Id. at 613 (footnote omitted).  Decisions concerning whether to grant a continuance to allow a defendant to obtain new counsel "must be accorded wide discretion."  Id.  Denial of a continuance exceeds the limits of that discretion only where it is based upon "'unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'"  Id. (quoting Morris v. Slappy, 461 U.S. 1, 11-12 (1983)).

Here, Petitioner and his retained counsel were present the morning that some of his cases were called for trial.  Counsel was ready and willing to try the cases and Petitioner wanted to go to trial.  Jury members were present and steps were even taken at one point to pick a jury.  Petitioner's request to change counsel was prompted, so far as the record at the time reflected, by the fact that Williams believed he should plead guilty and that proceeding to trial would be a disaster for Petitioner.[2]  Petitioner simply disagreed.  Also, at least two other attorneys had previously advised Petitioner to plead guilty.  Given the facts of the case,

---

[2]Petitioner complains that the trial judge did not inquire further to discover that the reason that he wanted new counsel was to obtain someone who would put his sister on the stand and accuse the trooper of lying on cross-examination.  The trial judge, Petitioner, and Williams discussed the matter at length.  It would have appeared to anyone in the trial judge's position that the problem between Petitioner and Williams was that Petitioner thought it best to go to trial and that Williams thought it best to accept the plea.  Petitioner never said anything to indicate otherwise, even after hearing the trial judge say several times that he viewed this as the problem.  The trial judge did not err by failing to inquire further when the nature of the problem already seemed apparent.  Petitioner also states that further inquiry would have let him raise the conflict of interest issue.  However, that argument is based on Petitioner's version of the facts in which he and Williams knew of the potential conflict at the time that his cases were called for trial.  As already discussed, the state courts have rejected that scenario as not being credible and Petitioner has not produced the clear and convincing evidence necessary to challenge the finding.

the other pending charges, and the possibility of a federal indictment, it was somewhat doubtful that Petitioner could have found an attorney who would have advised him differently than Williams and the others. Because of all of these factors, it cannot be said that the trial judge's denial of a continuance was "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Neither was the denial of Petitioner's claim in his motion for appropriate relief contrary to, or an unreasonable application of, established Supreme Court precedent. His second claim for relief should be denied.

### **4. Involuntary Plea**

Petitioner's final remaining claim is that his guilty plea was not knowing and voluntary because Williams incorrectly advised him that he would face a twenty-year sentence if he proceeded to trial and lost. Petitioner contends that, had he lost at trial on the charges that were called for trial on the day he pled guilty, he would still have been sentenced as a Class C felon with a prior record level of III. (Docket No. 11, at 11-12.) Therefore, the highest his sentence could have been was 145 to 183 months, even in the aggravated range. N.C. Gen. Stat. § 15A-1340.17. This is far less than twenty years.

Petitioner's claim fails on its face. "The Supreme Court has held that 'waivers of constitutional rights,' such as the right to a trial through a guilty plea, 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" Wilson v.

Ozmint, 352 F.3d 847, 856 (4th Cir. 2003)(quoting Brady v. United States, 397 U.S. 742, 748 (1970)). The state motion for appropriate relief court found in its first order that Petitioner's guilty plea was entered "freely, voluntarily and with full understanding." (Docket No. 9, Ex. 6 at 2.)

Williams' statements in open court on the day Petitioner pled guilty show that his advice to Petitioner was actually that he faced likely incarceration of far more than twenty years if he did not accept the plea offer. Williams was very concerned that, not only would Petitioner lose the cases called for trial and be sentenced as a habitual felon, but that he would then be tried and convicted as a habitual felon on several of his other charges. This would have resulted in multiple consecutive habitual felon sentences. Williams also feared the possibility of a federal indictment, which could result in a further sentence of over twenty years for Petitioner. In essence, his advice to Petitioner was not that he should accept the plea offer to avoid a twenty-year sentence on the charges called for trial, but that he should accept the plea offer to avoid the very real possibility of later sentences that would add up to a de facto life sentence for Petitioner. His advice concerning the sentence for the particular set of charges called for trial was irrelevant in light of the bigger picture.

Obviously, the state court's conclusion in its first motion for appropriate relief order that Petitioner's plea was knowing and voluntary was in no way contrary to, or an unreasonable application

-19-

of, Supreme Court precedent. Petitioner was advised of the relevant circumstances and the likely consequences of failing to plead guilty. Although he did not like what he was hearing, he obviously understood it. Petitioner was well-apprised of the situation he faced. Petitioner's final remaining claim for relief should be denied.

**IT IS THEREFORE ORDERED** that Respondent's motions to expand the record (docket nos. 12, 14) are granted and that Petitioner's motion to amend (docket no. 18) is denied.

**IT IS RECOMMENDED** that Respondent's motion for summary judgment (docket no. 8) be granted, that the petition (docket no. 1) be denied, and that Judgment be entered dismissing this action.

> /s/ Donald P. Dietrich
> **Donald P. Dietrich**
> **United States Magistrate Judge**

June 8, 2009